IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LINDA C. HUNTER, on her own behalf and
on behalf of those similarly situated,

                  Plaintiffs,

v.                                      CIVIL  ACTION  NO. 3:06-0919

JACKSON HEWITT, INC.,

                  Defendant.

## MEMORANDUM OPINION AND ORDER

        Pending before the Court is Defendant Jackson Hewitt, Inc.'s Motion to Dismiss.

For the following reasons, the Court **DENIES** Defendant's motion with respect to Counts I, IV, V,

and VI and **GRANTS** Defendant's motion with respect to Counts II and III.

## I.
## FACTS

        Plaintiff Linda C. Hunter filed this putative class action against Defendant on October

30, 2006.  In her Complaint, Plaintiff assets that she hired Defendant to prepare her federal income

tax return for the 2005 tax year.  Plaintiff also claims that she purchased a refund anticipation loan

(RAL), which allows customers to obtain a loan based upon their anticipated income tax refund.

Plaintiff states that she allowed Defendant to forward her application for the RAL, together with her

tax return, to a lending institution to obtain the RAL.  In Plaintiff's case, the lending institution

involved was Santa Barbara Bank &Trust (SBB&T).  Plaintiff asserts that these loans are financially

unsound as they carry an interest rate that sometimes exceeds 100%.  In exchange for its role in

arranging the loan, Plaintiff contends that Defendant received secret kickbacks and other secret or

concealed profits from the lending institution.  In doing so, Plaintiff claims that Defendant breached its fiduciary duty with her which arose out of their agency relationship (Count I), their confidential relationship (Count II), and Defendant's status as a loan broker (Count III).  In addition, Plaintiff asserts Defendant breached West Virginia's statute governing credit services organizations (Count IV), breached its contract with Plaintiff (Count V), and committed unfair or deceptive acts or practices in violation of West Virginia law (Count VI).  In its motion, Defendant argues that each of these counts must be dismissed.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the United States Supreme Court recently disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which has long been used to evaluate complaints subject to 12(b)(6) motions. 127 S. Ct. at 1969.  In its place, courts must now look for "plausibility" in the complaint.  This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (internal quotation marks and citations omitted).  Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 1965 (citations omitted).  If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 1966 (internal quotation marks and citations omitted).  Two weeks after issuing its decision in *Twombly*, the Court emphasized in *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the

pleader is entitled to relief.'  Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" 127 S. Ct. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964 (other citations and some internal quotations omitted). Thus, "a universal standard of heightened fact pleading" is not required, rather it is "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143,157-58 (2d Cir. 2007) (italics original).  It is under this revised standard that the Court must evaluate Plaintiff's Complaint in light of Defendant's 12(b)(6) motion.

### III.
### DISCUSSION

### A.
### Breach of Fiduciary Duty Arising
### Out of an Agency Relationship (Count I)

In Count 1 of the Complaint, Plaintiff asserts that Defendant acted as her agent in filing her income tax return and obtaining the RAL and that the parties consented to this relationship.  Plaintiff claims she had power and control over Defendant's conduct in several respects, including, but not limited to, the application process to obtain the RAL.  Plaintiff states that Defendant acted as her agent until she received the RAL and, therefore, Defendant owed her a fiduciary duty.  Plaintiff asserts that Defendant breached this duty by taking secret kickbacks and concealed profits, recommending a financially unsound transaction, failing to act in a reasonably prudent manner towards its principal, and by "attempting to insulate itself from its fiduciary duty and from West Virginia law." *Complaint*, ¶ 25.  In its motion to dismiss, Defendant contends Plaintiff only makes conclusory statements that it acted as her agent, the relationship was

consensual, and she exercised control over Defendant.  Defendant argues there are no facts to

support these allegations and, in fact, they are directly contradicted by Plaintiff's RAL agreement

with SBB&T.

Under West Virginia law, an agent is defined in its "restricted and proper sense" as

"a representative of his principal in business or contractual relations with third persons . . . ." Syl.

Pt. 2, in part, *Teter v. Old Colony Co.*, 441 S.E.2d 728 (W. Va. 1994) (internal quotation marks and

citation omitted).  An "essential element[] of an agency relationship is the existence of some degree

of control by the principal over the conduct and activities of the agent." Syl. Pt. 3, *id*.  An agency

relationship is said to exist when one party (the principal) grants either express or implied authority

to another party (the agent) to represent the principal in dealings with third persons, thereby creating

a fiduciary relationship between the principal and the agent. *See State ex rel. Clark v. Blue Cross

Blue Shield of West Virginia, Inc.*, 510 S.E.2d 764, 788 (W. Va. 1998).[1]  Whether or not an agency

---

[1]*Citing* 3 Am.Jur.2d *Agency* § 1, at 509-10 (1986) ("The term 'agency' means a fiduciary
relationship by which a party confides to another the management of some business to be transacted
in the former's name or on his account, and by which such other assumes to do the business and
render an account of it.  It has also been defined as the fiduciary relationship which results from the
manifestation of consent by one person to another that the other shall act on his behalf and subject
to his control, and consent by the other so to act.  Thus, the term 'agency,' in its legal sense, always
imports commercial or contractual dealings between two parties by and through the medium of
another.  In an agency relationship, . . . the one who acts for and represents the principal, and
acquires his authority from him, is known and referred to as an 'agent.' " (footnotes omitted)); 2A
C.J.S. *Agency* § 4, at 552, 554-55 (1972) (stating that "[a]gency is succinctly defined as a relation
created by an agreement between the parties; relationship between a principal and his agent; the
representation of one called the principal by another called the agent in dealing with third persons;
the relation resulting where one person authorizes another to act for him in business dealings with
others," and defining agent as "one who acts for or in the place of another by authority from him;
a person having express or implied authority to represent or act on behalf of another person who is
called his principal; a person employed or authorized by another to act for him, or to transact
(continued...)

relationship exists depends upon the facts of each case. *Arnold v. United Cos. Lending, Corp.*, 511 S.E.2d 854, 864 (W. Va. 1998). It is not necessary there be an express contract of agency as "[i]t may be inferred from facts and circumstances, including conduct[,]" of the parties. *Id*. (quoting *General Elec. Credit Corp. v. Fields*, 133 S.E.2d 780, 783 (1963) (internal quotation marks omitted)). Where there exists a factual conflict as to "'the degree of control exercised and the nature of the relationship thereby created, jury resolution is warranted.'" *Id*. (quoting *Thomson v. McGinnis*, 465 S.E.2d 922, 927 (1995)).

Defendant insists that Plaintiff does not, and cannot, allege any facts which show that she exercised any control over Defendant when it negotiated its agreements with SBB&T and it is those agreements which dictate Defendant's obligations with respect to the RALs. In particular, Defendant states that Plaintiff has no authority to change Defendant's obligations under its agreements with SBB&T, which basically entail providing a customer with the application developed by SBB&T for the customer's signature and then transmitting that application to SBB&T. In addition, it is entirely the customer's decision as to whether or not she should apply for the RAL. Therefore, Defendant argues Plaintiff's claim in Count I must be dismissed.

In response, Plaintiff asserts it is sufficient that she has alleged she controlled the decision of whether to apply for the RAL and, thus, controlled Defendant's conduct with respect to

---

[1](...continued)
business for him . . . ." (footnotes omitted)); 1A Michie's Jurisprudence *Agency* § 2, at 666 (1993) ("An agent is one who represents another, called the principal, in dealings with third persons. He is one who undertakes some business or to manage some affair for another by authority of or on account of the latter and to render an account of it." (footnotes omitted)).

the RAL process.  Specifically, she authorized Defendant to transmit the application to SBB&T and limited its authority to disclose tax information for any other purpose.  Plaintiff argues that she need not show she controlled every aspect of Defendant's RAL activities, including its negotiations with the bank.  Plaintiff insists that Defendant's argument goes more towards the degree of control she exercised rather than whether she exercised any control and such matter must be resolved by a jury. *Citing* Arnold, 511 S.E.2d at 865; *Thomson*, 465 S.E.2d at 927.

Plaintiff cites *Green v. H & R Block, Inc.*, 735 A.2d 1039 (Md. 1999), in support of her position.  *Green* involved a class action lawsuit filed against H & R Block over its RAL program.  Much like the present case, the plaintiff claimed that H & R Block received illegal kickbacks from the lending bank and, in doing so, breached its fiduciary obligations to its consumers. 735 A.2d at 1045.  H & R Block filed a motion to dismiss, which the appellate court treated as a motion for summary judgment because the lower court had considered matters outside of the pleadings. *Id*. at 1047.[2]  The appellate court found that the predominate issue to be resolved is whether an agency relationship existed between the plaintiff and H & R Block.  Under Maryland law, the appellate court stated "the primary determination of whether a principal-agent relationship exists involves ascertaining the parties' intent, as evidence by their agreements and actions[.]" *Id*. at 1049.  "'[T]he agency relationship can arise only when there is mutual consent between the two parties that it should arise.'" *Id*. (quoting W. Edward Sell, *Sell on Agency* §7, at 7-8 (1975).  As guidance, a court may consider "(1) the principal's right of control over the agent, (2) the agent's

---

[2]Although the lower court did not convert the motion into one for summary judgment, the appellate court found any prejudice that resulted to the plaintiff was minimized because the case was remanded. *Id*. at n.3.

duty to act primarily for the benefit of the principal, and (3) the agent's power to alter the legal relations of the principal." *Id*. However, those factors are not exclusive or conclusive as to whether an agency relationship exists. *Id*. In addition, the court stated that the amount of control a principal has over its agent "may be very attenuated with respect to the details[,]" so long as the principal has "ultimate responsibility to control the end result of his or her agent's actions[.]" *Id.* at 1051 (citations omitted).

Using this backdrop, the court proceeded to find a reasonable inference that H & R Block's consumers controlled its actions to file tax returns and apply for RALs. *Id*. at 1052. The court also found it was reasonable to infer that H & R Block's implicit endorsement of the RAL application lowered the bank's perceived risk in making the loan. *Id*. at 1053. Moreover, the court noted that H & R Block is authorized to share the consumer's tax return with the bank, which it prepares as an agent of the consumer, and the bank delivers the loan to H & R Block, which it, in turn, gives to the consumer. Thus, the court found it was "reasonable to infer that H & R Block played an integral part in the customer's receipt of the bank loan, which indisputably has legal ramifications for the H & R Block customer and the bank." *Id*. Furthermore, the court agreed with the plaintiff that "discovery may disclose other means by which H & R Block affected its customers' legal relations with third-party lenders." *Id*. Other factors which the court said supported a jury trial on the issue of agency was the fact that the plaintiff alleged there was mutual consent by the parties, that promotional advertising could lead to a reasonable belief that H & R Block was acting on the consumers' behalf in obtaining the maximum return in the shortest possible time by acting as an

intermediary with a bank, and that consumers "may reasonably believe that H & R Block has already 'shopped' to find the best loan package for its customers." *Id*. at 1053-54.

In addition, the court found problems with H & R Block's argument that after it works as the consumers' agent for tax preparation purposes, it changes hats and becomes an agent of the bank when it offers RAL services.  The court stated:

> First, assuming that H & R Block is the bank's agent, H & R Block still may be the customer's agent, even though its dual agency status may create liability problems arising from divided loyalties . . . .  Second, H & R Block concedes that it serves as its customers' agent to the lending bank for the limited purpose of transmitting the loan application and tax information to the bank, in light of the written form that its customers sign authorizing such transmission.  Thus, even within the context of a single loan transaction, H & R Block serves two different principals without disclosing that fact.  Third, it is not at all clear that H & R Block has completed its obligations as the agent of its customers prior to becoming the bank's agent.  It would appear that H & R Block cannot file its customer's tax return until after the RAL has been approved by the bank, since the IRS must be told to deposit the taxpayer's refund directly into the bank account that the lending institution created for the H & R Block RAL customer in order to secure the loan.  Thus, even under its own analysis, H & R Block begins acting as the bank's agent before it has completed its agency obligations for its customers.

*Id*. at 1054-55.  Therefore, the court said it was "unconvinced that, as a matter of law, H & R Block can so conveniently end one agency relationship and begin another simply by treating what may reasonably be construed as a package of related services as unrelated distinct transactions." *Id*. at 1055.  Instead, the court stated that the issue of agency must be resolved by a jury. *Id*.

In this case, Defendant insists that *Green* should not be followed because it is inconsistent with West Virginia case law.  In particular, Defendant states the court in *Green* relied upon the fact that the customer "ultimately controls" whether H & R Block prepared the tax return and transmitted the loan application, but the court made no finding with respect to whether the customer did or could have exercised any control over how the application was transmitted or the contractual obligations set between H & R Block and the bank.  Defendant argues that West Virginia law requires at least some control by the principal over the agent's conduct and activities, which Plaintiff has failed to show.  Therefore, Defendant asserts that this Court should follow those jurisdictions which have either dismissed or granted summary judgment in similar cases.

For instance, in *Peterson v. H & R Block Tax Services, Inc.*, 971 F. Supp. 1204 (N.D. Ill. 1997), the plaintiff only alleged in her complaint that she provided H & R Block the information necessary to complete her taxes. 971 F. Supp. at 1213.  She not only failed to allege that she "controlled the 'manner or method' in which Block performed its services[,]" but she actually alleged that Block "wielded complete control in determining . . . [her] RAL eligibility." *Id*. Therefore, the court found the plaintiff failed to plead sufficient facts "which, if proved, could establish the existence of an agency relationship." *Id*. (internal quotation marks and citation omitted).  In addition, the court found that under Illinois law regarding fiduciary relationships the plaintiff was "required to plead that Block had a 'significant degree of dominance and superiority' over her," and the complaint did not meet this standard. *Id*. at 1214.  The mere fact the plaintiff claimed she trusted Block was not enough to show a fiduciary relationship existed. *Id*.  Therefore,

the court granted Block's motion to dismiss the plaintiff's breach of fiduciary duty claim. *Id*. at 1215.

Citing *Peterson*, the court in *Beckett v. H & R Block*, 714 N.E.2d 1033 (Ill. App. Ct. 1999), reached a similar result.  The court found that the plaintiffs had not alleged that they controlled the manner and method that H & R Block performed work for them and H & R Block did not act as the plaintiffs' agent by merely giving the plaintiff the RAL application from the bank and then getting it from the plaintiff and giving it back to the bank. 714 N.E.2d at 744.  Relying upon both *Peterson* and *Beckett*, the New York Supreme Court, Appellate Division likewise found that the plaintiff acted as her own principal in entering into a RAL agreement with a bank in *Carnegie v. H & R Block*, 269 A.D.2d 145, 147, 703 N.Y.S.2d 27, 29 (2000).  With little discussion, the court stated that the plaintiff did not allege the RAL agreement "occurred in the context of any broader relationship of trust and confidence, but was simply incident to 'an arms-length, isolated transaction for tax preparation services and basic tax advice' and the disparity in sophistication between the parties did not, without more, give rise to any fiduciary duty." *Id*. (quoting *Peterson*, 971 F. Supp. at 1214 (other citation omitted)).

Finally, in *Basile v. H & R Block, Inc*., 761 A.2d 1115 (Pa. 2000), the Supreme Court of Pennsylvania considered *Green*, *Peterson, Beckett*, and *Carnegie*, and ultimately agreed with the *Peterson, Beckett*, and *Carnegie* line of cases in finding on a motion for summary judgment that an agency relationship did not exist under Pennsylvania law.  The court found that the pleadings did not show the plaintiffs intended, or authorized, H & R Block to secure RALs on their behalf. 761

A.2d at 1121.  Instead, the decision of whether to apply for RALs rested entirely with the plaintiffs. *Id*. H & R Block's role in the process was merely as a facilitator by presenting loan customers to the bank.   The court held that this role is insufficient to create an agency relationship under Pennsylvania law, which implicitly requires "that the agent has authority to alter the principal's relationships with third parties, such as binding the principal to a contract." *Id*.  In light of the facts presented, the court found that H & R Block had no authority to bind its customers to an RAL agreement with the bank. *Id*. at 1122.

In considering the Complaint in this case, the Court finds that, unlike *Peterson* and *Beckett*, Plaintiff has alleged in this case both consent and control between the parties with respect to the RAL application process.  In addition, similar to Maryland law as applied in *Green*, West Virginia law provides for jury determinations of factual disputes as to "the degree of control exercised and the nature of the relationship thereby created . . . . " *Thomas*, 465 S.E.2d at 927. Although the Court finds it is a close call as to whether Plaintiff has set forth sufficient facts to show that it is plausible that she entitled to relief in Count 1 under West Virginia law, the Court finds her allegations sufficient to withstand a 12(b)(6) motion to dismiss.  Therefore, the Court **DENIES** Defendant's Motion to Dismiss Count I.

### B.
### Breach of Fiduciary Duty Arising Out
### of a Confidential Relationship (Count II)

In Count II of the Complaint, Plaintiff claims that Defendant maintained a confidential relationship with her regarding her tax return and her desire to receive a RAL. Specifically, Plaintiff states that Defendant operated in a position of trust and confidence because

of its superior tax knowledge and its ability to obtain a RAL for her.  Plaintiff asserts that this confidential relationship gave rise to a fiduciary duty which Defendant breached by its actions related to the RAL.  Defendant argues, however, that this Count must be dismissed because Plaintiff has failed to allege any facts supporting a conclusion that Defendant agreed to enter into a confidential relationship with her in regard to the RAL or that Defendant exercised a significant degree of dominance and superiority over her.

Under West Virginia law, a confidential relationship is described as one in which a "person trusts and reposes confidence in another . . . ." *Nugen v. Simmons*, 489 S.E.2d 7, 13 (W. Va. 1997) (per curiam) (Starcher, J., dissenting).  Generally, "'a fiduciary relationship is established only when it is shown that the confidence reposed by one person was actually accepted by the other, and merely reposing confidence in another may not, of itself, create the relationship.'" *Elmore v. State Farm Mut. Auto. Ins. Co.*, 504 S.E.2d 893, 899 (W. Va. 1998) (quoting 36A C.J.S. Fiduciary, p. 385 (1961)).  Other jurisdictions further have explained that a "confidential relationship refers to an unequal partnership between parties in which one surrenders to the other some degree of control because of the trust and confidence he reposes in the other." *Stawflower Elecs., Inc. v. Radioshack Corp.*, No. C-05-0747 MMC, 2005 WL 2290314, *4 (N.D. Cal. Sept. 20, 2005) (internal quotation marks and citation omitted); *see also Glaberman Assocs., Inc. v. J. Kinderman & Sons,* No. CIV. A. 98-3711, 1999 WL 98588, *3 n.8 (E.D. Pa. Feb. 25, 1999) (citations omitted) (stating "claims concerning confidential relationships (or fiduciary duties) arise in both the New York and Pennsylvania case law in the context of unequal relationships in which one party relies upon or places trust in the greater strength or knowledge of another").  In *Vercellotti v. Bowen*, 371 S.E.2d

-12-

371 (W. Va. 1988) (per curiam), the West Virginia Supreme Court looked to the unequal footing between a decedent and the joint owner of a savings account and three certificate of deposit in finding that such disparity could give rise to a confidential relationship and support a constructive fraud instruction. 371 S.E.2d at 372 & 375.

Here, assuming as true that Defendant did have superior tax knowledge over Plaintiff, Plaintiff placed her confidence with Defendant with regard to her taxes, and Defendant accepted that confidence, those facts only extend to whether there was a confidential relationship with regard to Plaintiff's taxes.  Plaintiff's claim with respect to the RAL is that Defendant had the "ability to obtain for her a Rapid Refund." *Complaint* at ¶ 29.  Plaintiff further claims that she "had the power and the right to control Jackson Hewitt's conduct in the application process and the right to determine the ultimate objective of the transaction–whether to apply for a RAL. *Id*. at ¶ 21.[3]  Upon consideration, the Court agrees with Defendant that these allegations are insufficient to state a plausible claim that she had a confidential relationship with Defendant with respect to the RAL. Therefore, the Court **GRANTS** Defendant's motion to dismiss Count II.

### C.
### Breach of Fiduciary Duty
### Arising out of Defendant's Status
### as a Loan Broker (Count III)

In Count III, Plaintiff asserts that Defendant acted as a loan broker by virtue of the fact that "it arranged security for the RAL, negotiated the interest rate and fees to be charged, and

---

[3]This paragraph is contained in Count 1 of the Complaint but is incorporated by reference in Count 2. *Id*. at ¶ 27 (providing "[t]his paragraph incorporates by reference all of the preceding paragraphs as if they were set forth fully here").

brought the lending institution and Plaintiff together." *Id.* at ¶ 35.  Plaintiff claims its status as a loan

broker gave rise to a fiduciary duty which was breached by Defendant's actions with respect to the

RAL.  In *Moore v. Turner*, 71 S.E.2d 342 (W. Va. 1952), the West Virginia Supreme Court drew

an important distinction between a broker and a mere middleman.  There the court said that a broker

is someone "employed as the agent of one of the parties and a middleman is employed merely to

bring the parties together but does not act as the agent of either party." 71 S.E.2d at 350.  Stated

another way, the court said a middleman has

> no duty to perform but to bring the parties together,
> *leaving them to negotiate and come to an agreement*
> *themselves without any aid from him.*  If he *takes*, or
> contracts to take, any part in the negotiations,
> however, he cannot be regarded as a mere middleman,
> no matter how slight a part may be.

*Id.* (italics original; internal quotation marks and citation omitted).  A mere middleman also "may

recover an agreed compensation from either or both, though neither may know that compensation

is expected from the other." *Id.*


    In this case, Defendant worked out a pre-existing relationship with the bank to offer

RALs to its customers.[4]  There is nothing to suggest that Defendant took part in any direct

---

[4]Defendant attached various documents to its motion to dismiss, including the RAL Application and Agreement.  Plaintiff asserts that Defendant cannot rely upon this document without converting the motion to one for summary judgment.  However, as indicated by Defendant, this Court may consider documents that are integral to the Complaint and authentic without converting the motion to one for summary judgment. *See Collins v. Red Roof Inns, Inc.*, 248 F. Supp.2d 512, 516 (S.D. W. Va. 2003) (holding that "when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment" (internal quotation marks and citation omitted)); *Secretary of State For Defence*
(continued...)

negotiations of the terms of the contract between Plaintiff and the bank, nor is there anything to indicate that Defendant had authority or the power to negotiate the terms of the contract when it was offered to Plaintiff.  Although Plaintiff asserts in her Complaint that Defendant "negotiated the interest rate and fees to be charged,"[5] Plaintiff signed a pre-existing form contract between herself and SBB&T.  The fact that Defendant offered the RAL to Plaintiff and she authorized Defendant to send her tax information, together with the pre-existing RAL application form, to SBB&T, does not make Defendant a loan broker for Plaintiff.  In addition, the fact that Defendant accepted compensation from SBB&T, does not make Defendant a broker.  Therefore, the Court finds that Plaintiff has failed to allege a plausible claim that Defendant acted as a loan broker in arranging the transaction between Plaintiff and SBB&T.  Thus, the Court **GRANTS** Defendant's motion to dismiss Count III.[6]

---

[4](...continued)
*v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (stating that upon review of a 12(b)(6) motion, it "may consider documents attached to the complaint, . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" (citation omitted)). As the RAL application and agreement at issue here is integral to the Complaint and Plaintiff has not disputed its authenticity, the Court finds it can rely upon this document without considering Defendant's motion as one for summary judgment.

[5]*Complaint* at ¶ 35.

[6]Plaintiff also argues that Defendant cannot defeat any of her fiduciary duty claims based upon language in the RAL Application and Agreement, which provides: "You agree that neither your Tax Preparer nor JHI is acting as your agent or is under fiduciary duty to your regarding this Application or your RAL." *Santa Barbara Bank & Trust (SBBT) Refund Processing and Refund Anticipation Loan (RAL) Application and Agreement*, at 5.  Plaintiff asserts, inter alia, that this language is unenforceable because it is a contract of adhesion, purports to be exculpatory, is void on public policy grounds, and is based upon misrepresentations.  Defendant replies that the language is not exculpatory, but it only describes the parties' actual legal status.  Having determined that Counts II and III must be dismissed on other grounds, the significance of this language, if any, only impacts Count I.  As there may be factual issues to resolve regarding Plaintiff's argument that the language is unenforceable, the Court declines at this time to determine what impact, if any, this
(continued...)

**D.**
**Breach of West Virginia's Statute Governing**
**Credit Services Organizations (Count IV)**

In Count IV, Plaintiff alleges that Defendant is a credit service organization (CSO),

as defined by West Virginia Code § 46A-6C-2, because it receives compensation for obtaining

RALs for its customers.  As a CSO, Plaintiff asserts Defendant violated a variety of the West

Virginia Consumer Credit and Protection Act's (CCPA) CSO provisions, West Virginia Code

§ 46A-6C-1 *et seq.*  Section 2 defines a CSO as:

> a person who, with respect to the extension of credit
> by others and in return for the payment of money or
> other valuable consideration, provides, or represents
> that the person can or will provide, any of the
> following services:
>
> (1) Improving a buyer's credit record, history or
> rating;
>
> (2) Obtaining an extension of credit for a buyer; or
>
>
> (3) Providing advice or assistance to a buyer with
> regard to subdivision (1) or (2) of this subsection.

W. Va. Code § 46A-6C-2(a).  A buyer is defined as "an individual who is solicited to purchase or

who purchases the services of a credit services organization as defined in section two of this article."

W. Va. Code § 46A-6C-1(1).


Defendant asserts that it is not a CSO because Plaintiff does not fit within the

definition of a buyer.  Specifically, Defendant argues that Plaintiff did not purchase its services with

---

[6](...continued)
language has on Count I.

-16-

regard to improving Plaintiff's credit history or rating, obtaining credit for Plaintiff, or providing her advice or assistance on these matters.  In fact, Defendant contends that the only payment it received with regard to RALs was from SBB&T pursuant to the fixed marketing fee and the technology services agreement.  Although Defendant denies receiving any payment from Plaintiff, Plaintiff alleges that she "purchased Jackson Hewitt's RAL service[.]" *Complaint* at ¶ 7; *see also Complaint* at ¶ 44(a) and (b) (providing, in part, that Defendant charged Plaintiff and received money from her before completing its services as a CSO and for the referral to a retail seller of loans) and ¶ 56(a) (stating that Defendant tricked "Plaintiff by promising her 'Money Now' but selling her a loan instead").  For purposes of a motion to dismiss, the Court must assume Plaintiff's allegation is true and, therefore, the Court cannot dismiss Plaintiff's claim on this basis.

Defendant also argues it would be absurd to consider it a CSO because it acted similar to hundreds of retailers which promote credit card offers from third-party banks and those retailers are not regarded as offering credit services.  Even if Defendant's argument ultimately proves to be valid,[7] it is not an appropriate grounds for this Court to grant a motion to dismiss where Plaintiff has alleged that she purchased RAL services from Defendant.  Thus, the Court **DENIES** Defendant's motion to dismiss Count IV.

### E.
### Breach of Contract
### (Count V)

In Count V, Plaintiff asserts that she "had a valid, written contract with . . . [Defendant] to prepare her tax return, and to obtain a RAL for her" and that Defendant's actions

---

[7]To be clear, the Court has made no decision on this issue by its comment.

breached an implied duty of good faith and fair dealing. *Complaint*, at ¶¶ 55 & 56.  Defendant responds by pointing out that Plaintiff's RAL contract is with SBB&T, not with it.  Plaintiff merely replies by stating that a contract exists and Defendant breached its duties of good faith and fair dealing by its actions.  Clearly, the issue of whether or not a written contract exists is factual disputed by the parties and is an appropriate matter for discovery.  Therefore, the Court **DENIES** Defendant's motion to dismiss Count V.

**F.**
**Unfair or Deceptive**
**Acts or Practices (Count VI)**

Plaintiff's last count is that "Defendant committed unfair or deceptive acts or practices in the conduct of trade or commerce in violation of W. Va. Code 46A-6-104." *Id*. at ¶ 59. Plaintiff also alleges that "Defendant engaged in conduct which creates a likelihood of confusion or misunderstanding" and it "committed the act, use or employment of a deception, fraud, misrepresentation, or the concealment, suppression, or omission of any material fact." *Id*. at ¶¶ 60 & 61 (citing W. Va. Code § 46A-6-102(12) and (13)).  Finally, Plaintiff states Defendant violated West Virginia Code § 46A-6C-1 *et seq. Id*. at ¶ 62.

Defendant argues this claim must be dismissed because she does not identify a single factual allegation supporting her claim, and her claims of "fraud" and deceptive practices must comply with the heightened standard pursuant to Rule 9(b) of the Federal of Civil Procedure. Plaintiff insists, however, that her allegations that Defendant "negotiated and took secret kickbacks, breached fiduciary duties, profited at . . . [her] expense, and directed . . . [her] to the unsound financial transaction that is a RAL" are sufficient to support her claim in Count VI. *Plaintiff's*

-18-

*Memorandum in Opposition to Defendant's Motion to Dismiss Complaint*, at 17.   In addition,

Plaintiff contends that she need not comply with Rule 9(b) because it does not apply to unfair or

deceptive acts or practices claim and, even if it does, she fulfilled its requirements.


Pursuant to Rule 9(b), a party must plead fraud with particularity. Fed.R.Civ.P. 9(b)

(providing, in part, "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall

be stated with particularity").  The particularity requirement extends to "the time, place, and contents

of the false representations, as well as the identity of the person making the misrepresentation and

what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th

Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure:*

*Civil* § 1297, at 590 (2d ed. 1990) (other quotation marks and citations omitted)).  The purpose of

Rule 9(b) is four-fold and include:

> First, the rule ensures that the defendant has sufficient
> information to formulate a defense by putting it on
> notice of the conduct complained of.... Second, Rule
> 9(b) exists to protect defendants from frivolous suits.
> A third reason for the rule is to eliminate fraud actions
> in which all the facts are learned after discovery.
> Finally, Rule 9(b) protects defendants from harm to
> their goodwill and reputation."

*Id.* (quotation marks and citation omitted).   In considering motions to dismiss, "[a] court should

hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has

been made aware of the particular circumstances for which she will have to prepare a defense at

trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

Here, Plaintiff has alleged that she hired Defendant to prepare and file her 2005 tax return and to obtain a RAL for her.  As evidenced by her signed agreement, the parties are aware that she signed her application for the RAL on January 21, 2006.  Throughout her Complaint, Plaintiff asserts that Defendant knew that the RAL was a financially unsound transaction, yet it arranged the loan in exchange for receiving secret kickbacks and secret and concealed profits from the lending bank.  In addition, Plaintiff asserts that Defendant falsely represented that the program is "an accelerated tax refund from the government and not a loan" and falsely represented the fees it would receive. *Complaint* at ¶¶ 44(c) and (d).[8]  Clearly, when considering the Complaint as a whole, Plaintiff has stated her claims with sufficient particularity under Rule 9(b) as to give Defendant enough information upon which it can formulate its defense.  Thus, the Court finds it need not determine which pleading standard applies because Count VI is sufficient under either standard.  Therefore, the Court **DENIES** Defendant's motion to dismiss Count VI.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant's motion with respect to Counts I, IV, V, and VI and **GRANTS** Defendant's motion with respect to Counts II and III.

---

[8]Paragraph 44 is listed under Count IV, but is incorporated by reference into Count VI. *Complaint* at ¶ 58.

-20-

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:          November 6, 2007

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE