IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LINDA C. HUNTER, on her own behalf and
on behalf of those similarly situated,

        Plaintiffs,

v.                             CIVIL ACTION NO. 3:06-0919

JACKSON HEWITT, INC.,

        Defendant.

Pending before the Court is Defendant Jackson Hewitt, Inc.'s Motion for Partial Summary Judgment on Plaintiff Linda C. Hunter's Breach of Contract Claim. [Doc. No. 68]. For the following reasons, the Court **GRANTS** Defendant's motion.

## I.
## FACTS

As set forth in the Court's Memorandum Opinion and Order entered on November 6, 2007, this case involves a putative class action against Defendant for its role in arranging a refund anticipation loan (RAL) between Plaintiff and Santa Barbara Bank &Trust (SBBT). In Count V of the Complaint, Plaintiff alleges she "had a valid, written contract with . . . [Defendant] to prepare her tax return, and to obtain a RAL for her" and the contract was breached. *Complaint*, at ¶¶ 55 & 56. Defendant previously moved to dismiss this Count, but the Court denied Defendant's motion to allow for discovery. Defendant now moves for summary judgment on this claim.

## II.
## STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III.
## DISCUSSION

In its Motion for Partial Summary Judgment, Defendant argues no written agreement between Plaintiff and Defendant has been produced during discovery and there is no evidence upon which a reasonable juror could find that a written agreement exists. In her Response, Plaintiff insists

that such contract was formed by two agreements she signed. These agreements are entitled the "Santa Barbara Bank & Trust (SBBT) Refund Processing and Refund Anticipation Loan (RAL) Application and Agreement" and the "Taxpayer Information Form." Specifically, Plaintiff points to the following paragraphs which she argues supports her claim that a written contract exists between her and Defendant.

1) Under the section entitled "Disbursement Method," it provides that the "loan proceeds . . . will be disbursed to . . . [Plaintiff] via an SBBT cashier's check printed by . . . [her] Tax Preparer." *Santa Barbara Bank & Trust (SBBT) Refund Processing and Refund Anticipation Loan (RAL) Application and Agreement*, at ¶ 1, in part.

2) Under the section entitled "Consent/Authorization," it authorizes SBBT to deduct certain fees and a finance charge from the RAL. It also provides that "[a] portion of these fees may be shared with Jackson Hewitt, Inc., and your tax preparer." *Id*. at ¶ 5, in part.

3) The agreement further authorizes Defendant and SBBT "to exchange information about . . . [Plaintiff's] current and prior RALs with other RAL lenders . . . ." *Id*. at ¶ 6, in part.

4) If Plaintiff's RAL is denied, the agreement authorizes that any outstanding Tax Preparer fees be deducted from the Account. This section is followed by a caveat that Plaintiff "understand[s] that SBBT may be acting as a third party debt collector hereunder in attempting to collect a debt pursuant to . . . [this section] and may use . . . [Plaintiff's] authorization . . . and any information obtained . . . to collect . . . delinquent . . . Tax Preparer fees . . . ." *Id*. at ¶ 6(c).

5) The agreement also authorizes Defendant to disclose Plaintiff's tax return to SBBT and to share information with others including SBBT "for the purpose of underwriting RALs . . . ." *Id*. at ¶ 7, in part.

6) In addition, the agreement provides that Plaintiff agrees and consents to her Tax Preparer and/or Defendant receiving the fees as set forth in the agreement. *Id*. at ¶ 12, in part.

       7)      Under the paragraph entitled "Loan Cancellation," it states that Plaintiff "may rescind a loan within 48 hours by either returning the original check issued for the loan or providing the amount of the loan in cash to the lender or the facilitator. *Id*. at p. 5, in part.

       8)      Underneath the title of the agreement, it states that it is "A Program Available Through Jackson Hewitt Tax Service." *Id.* at p. 1.

       9)      Finally, the agreement was signed by both Plaintiff and the Tax Preparer as "Witness." *Id*. at p. 5.

Plaintiff also argues the disclaimer in paragraph 12 that states she "agree[s] that neither . . . [her] Tax Preparer nor JHI is acting as . . . [her] agent or is under any fiduciary duty to . . . [her] regarding this Application or . . . [her] RAL" is unenforceable under West Virginia law. With regard to the "Taxpayer Information Form," Plaintiff insists that an agreement between she and Defendant exists because:

       1)      "Page 1 restates the Plaintiff's agreement to purchase a RAL, and briefly outlines certain terms of the RAL Application."

       2)      "Page 2 states that Mrs. Hunter 'understand[s] and agree[s]' that if she is not approved for a RAL or other product, she will be notified by the bank, and her loan proceeds would be reduced by amounts she owes to certain other purported creditors, including Jackson Hewitt."

       3)      "Page 2 also states that Mrs. Hunter is responsible for the payment of all fees to Jackson Hewitt if her RAL application is denied."

*Plaintiff's Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment on Plaintiff's Breach of Contract Claim*, at 5.

In considering whether these facts are sufficient to survive summary judgment, the Court must look to the basics of contract law. It is well established under West Virginia law that "'[t]he fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement.' Syllabus Point 5, *Virginian Export Coal Co. v. Rowland Land Co.*, 100 W. Va. 559, 131 S.E. 253 (1926)." Syl. Pt. 1, *Kessel v. Monongalia County Gen. Hosp. Co.*, 600 S.E.2d 321 (W. Va. 2004). "In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other." *Bailey v. Sewell Coal Co.* 437 S.E.2d 448, 450-51 (W. Va. 1993) (citations omitted). Here, Defendant insists that a reasonable juror could not find the existence of a contract between Plaintiff and Defendant as mutuality and consideration do not exist. For the following reasons, the Court agrees that a reasonable juror could not find a written contract exists.

The first document Plaintiff relies upon to show that a written contract exists between Defendant and herself very clearly states in bold letters at the top of the agreement "**SANTA BARBARA BANK & TRUST (SBBT) REFUND PROCESSING AND REFUND ANTICIPATION LOAN (RAL) APPLICATION AND AGREEMENT**." This title is repeated on the top of every page of the agreement and evidences that the application and agreement is being offered by SBBT, not Defendant. Although the agreement also states in small, regular type on the first page that it is "A Program Available Through Jackson Hewitt Tax Service," this fact does not make Defendant a party to the agreement. Instead, this statement merely reflects the fact that SBBT

-5-

and Defendant have a separate agreement to make SBBT's RAL services available through Defendant.

To support her contract argument, Plaintiff also relies upon the fact that the Tax Preparer signed the agreement. However, the signature line very clearly designates his signature as that of a "Witness." Signing a document as a "Witness" does not make the "Witness" a party to the agreement. It is simply an affirmation that the Tax Preparer watched as Plaintiff actually signed the document.

Next, in looking at the specific paragraphs cited by Plaintiff, the Court finds that those provisions also do not make Defendant a party to this agreement. This case is analogous to *Carnegie v. Household Int'l, Inc.*, 220 F.R.D. 542 (N.D. Ill. 2004), in which H & R Block moved to dismiss a breach of contract claim against it based upon its argument that it was not a party to a RAL contract. 220 F.R.D. at 547. The plaintiff relied upon the following language in asserting that H & R Block entered into a unilateral contract with its customers:

> I hereby authorize and request H & R Block and its affiliates to disclose to Beneficial National Bank and its agents ("BNB") my federal income tax return for tax year 1994, any and all other information contained in such tax return, all information supplied to H & R Block, including IRS direct deposit information, in connection with the preparation of such tax return, and all other information contained in this form and any information contained in any of my prior RAL applications which was disclosed to H & R Block. I authorize and consent to the disclosure of the foregoing information for the purpose of enabling BNB to determine whether or not to make a Refund Anticipation Loan ("RAL") to me in response to any

> application for such loan which is a part of this form . . . H & R Block may not use or disclose such tax return information for any purpose . . . other than as stated herein.

*Id*. at 547-48 (citation omitted). In considering this language, the court found it imposes no obligation upon H & R Block whatsoever. *Id*. at 548. The court stated that, although the language authorizes H & R Block to disclose information, H & R Block "makes no promise, or even offer, to do so." *Id*. Therefore, the court stated it could not "see how Block can be in breach of an agreement wherein it did not promise to do anything" and it granted H & R Block's motion to dismiss the contract claim against it. *Id*.

Similarly, there is nothing in the provisions cited by Plaintiff in the present case that imposes a contractual obligation upon Defendant to Plaintiff. Instead, those provisions basically define how SBBT plans on delivering the proceeds of the RAL to Plaintiff and authorize SBBT and Defendant to share information so that SBBT can process the RAL. The same is true with the Taxpayer Information Form. The provisions summarized by Plaintiff do not impose any duties upon Defendant. Plaintiff insists, however, that Defendant was obligated to facilitate her RAL with SBBT. Defendant does not disagree with Plaintiff's assertion, but Defendant argues that its obligation in this regard is because of its pre-existing contracts with SBBT[1] and it has no such contractual obligation with Plaintiff. The Court agrees. The Court finds there is simply nothing in the provisions cited by Plaintiff which a reasonable juror could find contractually obligates Defendant to Plaintiff with respect to the RAL.

---

[1] Defendant attached the relevant contractual obligations it has with SBBT to its motion.

Finally, Defendant argues there is no consideration for the alleged contract. As the Court has found Defendant has not made any promises to Plaintiff in these agreements, the issue of whether Plaintiff has given Defendant consideration in exchange for a non-existent agreement is moot and a mere academic exercise. Therefore, the Court declines to address this issue.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court concludes that a reasonable juror could not find that Defendant and Plaintiff entered into a written contractual agreement with respect to the RAL and, therefore, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment on Plaintiff's contract claim. [Doc. No. 68].

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: March 13, 2008

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE