IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHRISTIAN and ELIZABETH HARPER,
on their own behalves and
on behalf of those similarly situated,

        Plaintiffs,

v.                                   CIVIL ACTION NO. 3:06-0919

JACKSON HEWITT, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are cross-motions for summary judgment [doc. nos. 200 and 204], Plaintiffs' Motion for Class Certification [doc. no. 198], and Plaintiffs' Motion to Certify Questions to the Supreme Court of Appeals of West Virginia [doc. no. 230]. For the following reasons, the Court **GRANTS** Plaintiffs' Motion to Certify Questions, **DENIES**, in part, Defendant's Motion for Summary Judgment, **DENIES without prejudice** the remainder of Defendant's Motion for Summary Judgment, **DENIES without prejudice** Plaintiffs' Motion for Summary Judgment, and **HOLDS IN ABEYANCE** Plaintiffs' Motion for Class Certification. The Court also **STAYS** this matter until a decision by the West Virginia Supreme Court is rendered.

**I.**
**FACTUAL AND PROCEDURAL SUMMARY**

This action involves a punitive class action that originally was brought by Linda C. Hunter against Defendant Jackson Hewitt, Inc. The original Complaint generally alleged that Ms. Hunter hired Defendant to prepare her federal income tax return for the year 2005, and in the process

she also purchased a refund anticipation loan (RAL). A RAL allows customers to obtain a loan based upon their anticipated income tax refund. Ms. Hunter asserted that she allowed Defendant to forward her application for the RAL, together with her tax return, to Santa Barbara Bank & Trust (SBB&T), a lending institution. Ms. Hunter claimed the RAL carried an exorbitant interest rate and was financially unsound. She also maintained that Defendant received secret kickbacks and concealed profits from SBB&T for arranging the loan.

As a result, Ms. Hunter brought this action alleging six counts against Defendant. Specifically, she claimed Defendant breached its fiduciary duty with her arising out of an agency relationship (Count I), breached its fiduciary duty arising out of a confidential relationship (Count II), and breached its fiduciary duty arising out of Defendant's status as a loan broker (Count III). In addition, Ms. Hunter asserted Defendant breached West Virginia's statutes governing credit services organizations (CSO) (Count IV), breached its contract with her (Count V), and committed unfair or deceptive acts or practices in violation of West Virginia law (Count VI). On November 6, 2007, this Court granted Defendant's motion to dismiss Counts II and III and denied its request to dismiss the remaining counts. On March 13, 2008, the Court granted summary judgment in favor of Defendant on Plaintiff's contract claim (Count V). Thus, the only claims remaining are the claims for a breach of a fiduciary duty related to an agency relationship (Count I), a breach of the statutes governing CSOs (Count IV), and a claim for unfair or deceptive acts or practices (Count VI).

On June 30, 2008, the Court granted a Motion to Amend the Complaint to substitute Christian and Elizabeth Harper and Donna Wright as the putative class representatives.

Subsequently, Ms. Wright was dismissed by stipulation of the parties on September 4, 2008. Thereafter, the parties conducted additional discovery and Defendant took the depositions of the Harpers. Having completed discovery, Defendant now moves for summary judgment on the three remaining claims and Plaintiffs seek partial summary judgment on Count IV for violation of West Virginia's statutes governing CSOs. After those issues were fully briefed and Plaintiffs' Motion to Certify the Class was fully briefed, Plaintiffs moved to certify certain questions subject to the summary judgment motions to the West Virginia Supreme Court. Defendant opposes certification of the questions. For the following reasons, the Court agrees with Plaintiffs that certification is appropriate.

## II.
## DISCUSSION

In this case, Plaintiff proposes to certify four questions to the West Virginia Supreme Court. These questions are:

1. Does a tax preparer who receives compensation, either directly from the borrower or in the form of payments from the lending bank, for helping a borrower obtain a refund anticipation loan meet the statutory definition of a credit services organization, or "CSO," (W. Va. Code § 46A-6C-2(a)), and do the borrowers in such a transaction meet the definition of a buyer (*id*. § 46A-6C-1(1))?

2. Is the appropriate limitations period for actions alleging violations of the CSO statutes (*id*. § 46A-6C-1 *et seq.*) and the statutory prohibition on unfair or deceptive acts or practices (*id.* § 46A-6-104) four years under West Virginia Code § 46A-5-101(1), or one year under the general limitation period in West Virginia Code § 55-2-12?

> 3. Are the contractual agency disclaimers in the refund anticipation loan applications enforceable under West Virginia law?
>
> 4. Is a tax preparer who helps a customer obtain a refund anticipation loan in exchange for compensation an agent under West Virginia law?

Plaintiffs argue these questions should be certified because they all raise issues of first impression under West Virginia law and implicate substantial issues of statutory interpretation and public policy. On the other hand, Defendant argues this Court should not certify the questions for several reasons.

**A.**
**Efficiency of Certifying Question**

First, Defendant argues that certification defeats the mandate of Rule 1 of the Federal Rules of Civil Procedure which calls for a "just, speedy and inexpensive" determination of every action brought in the district courts. Defendant asserts that Plaintiffs chose to litigate this matter in federal court and waited until the issues were fully briefed before this Court before deciding the issues should be determined by the state court. Defendant argues that certification would result in a complete waste of time and money as resolution of the issues presented involves a straightforward application of specific West Virginia statutes, caselaw, and prior rulings.

Although the Court is cognizant of the additional time and money the parties will spend in asking the West Virginia Supreme Court to resolve the issues, the Court finds that the amount of money and effort it will take to file briefs with the West Virginia Supreme Court will be greatly reduced by the fact the issues are already fully briefed before this Court. In addition, the Court agrees with Plaintiffs that the questions at issue are novel and implicate substantial public policy in West Virginia. Despite basic agreement as to the facts, the parties wrote over 150 pages

to fully brief the issues in their cross-motions for summary judgment. Certainly, the amount of briefing on an issue is not always a litmus test as to the significance and complexity of the issue. However, in this case, the Court has reviewed all the briefing and finds they are reflective of substantial issues under West Virginia law and demonstrate the diametrically opposed positions of the parties' interpretation of the relevant statutes and caselaw. Clearly, this Court has authority to rule on the issues, but it finds it ultimately will be more efficient to have the issues definitively ruled upon by the West Virginia Supreme Court. Such procedure will eliminate the potential for protracted appeals on the issues through the federal system. As explained by the United States Supreme Court in *Arizonians for Official English v. Arizonia*, 520 U.S. 43 (1977):

> Certification procedure . . . allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response. . . . Through certification of novel or unsettled questions of state law for authoritative answers by a State's highest court, a federal court may save "time, energy, and resources and hel[p] build a cooperative judicial federalism."

520 U.S. at 76-77 (quoting *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974)) (other citations omitted).

## B.
## Whether Certification is Futile

Second, Defendant argues the case can be decided without ruling upon the certified questions and, therefore, certification is futile. Specifically, Defendant assets that (1) the evidence demonstrates Plaintiffs were not injured by any violation of the CSO statutes; (2) Plaintiffs' CSO claim is preempted by the National Bank Act, 12 U.S.C. § 24; (3) the evidence shows Plaintiffs'

breach of fiduciary duty claim must fail because Defendant never agreed to subordinate its financial interest to Plaintiffs' interests, there is no genuine issue of material fact regarding a breach, and there is no evidence of damage; and (4) Plaintiffs' unfair or deceptive acts or practices (UDAP) claim must fail because there is no evidence of an unfair or deceptive act or practice and there is no evidence of an ascertainable loss of money or property.

**1.**
**Whether there is sufficient evidence of an injury**
**to maintain a CSO claim**

With respect to the injury issue and the CSO claim, Defendant argues Mr. Harper suffered no injury as a result of the loan as evidenced by the fact he stated during his deposition that he was not unhappy with the RAL he received and would get the same loan again if he went back in time. *Deposition of Christian Harper*, at 196-97 (Jan. 20, 2009). Mr. Harper further testified that he was in a financial bind at the time and needed to get his refund as fast as possible. *Id.* at 197. However, the fact that Mr. Harper would do the same thing over again if he was in the same desperate financial situation does not necessarily mean that he was not injured by statutory violations. For instance, one of the allegations in Plaintiffs' Amended Complaint is a violation of West Virginia Code § 46A-6C-3(2), which provides:

> A credit services organization, a salesperson, agency or representative of a credit services organization or an independent contractor who sells or attempts to sell the services of a credit services organization may not:
>
> \*  \*  \*
>
> (2) Charge a buyer or receive from a buyer money or other valuable consideration solely for referral of the buyer to a retail seller who will or may extend credit to the buyer if the credit that is or will

> be extended to the buyer is substantially the same as that available to the general public from other sources[.]

W. Va. Code § 46A-6C-3(2).[1] If Plaintiffs can prove a violation of this provision, the injury arises from the charge made or money or other valuable consideration received by the CSO from the buyer.[2] A CSO cannot be relieved of its responsibility under this provision and for violating this provision merely because a consumer may be willing to take the same course of action if he could go back in time. The injury exists if the provision is violated regardless of the consumer's hindsight decision-making. Therefore, the Court **DENIES** Defendant's Motion for Summary Judgment on this ground.

Moreover, the Court finds the issue of injury may be entirely moot upon the West Virginia Supreme Court's decision on the first proposed certified question as to whether or not Defendant qualifies as a CSO, as that term is defined in West Virginia Code § 46A-6C-2,[3] or Mr.

---

[1] In paragraph 48(b) of the Amended Complaint, Plaintiffs allege that "Jackson Hewitt engaged in conduct prohibited by *W. Va. Code* § 46A-6C-1 et seq. by, *inter alia*: . . . [c]harging Plaintiffs and receiving money from them solely for the referral to a retail seller of loans, when such credit was substantially the same as that available to the general public from other sources." *Amended Complaint*, at ¶ 48(b).

[2] The Court understands Defendant disputes that it ever received any money directly from Plaintiffs for arranging the RALs, but Plaintiffs' allegation is that Defendant received secret kickbacks from SBB&T for arranging loans to Plaintiffs in which SBB&T received excessive interest with relatively low risk. In other words, it can be considered an allegation of a backdoor payment by Plaintiffs.

[3] West Virginia Code § 46A-6C-2 provides, in part:

> (a) A credit services organization is a person who, with respect to the extension of credit by others and in return for the payment of money or other

(continued...)

Harper was a "buyer," as that term is defined in § 46A-6C-1.[4] If the West Virginia Supreme Court determines that either Defendant does not qualify as a CSO or Mr. Harper is not a "buyer," then Plaintiffs may not collect damages under West Virginia Code § 46A-6C-9.[5] If, on the other hand,

---

[3](...continued)
    valuable consideration, provides, or represents that the person can or will provide, any of the following services:

    (1) Improving a buyer's credit record, history or rating;

    (2) Obtaining an extension of credit for a buyer; or

    (3) Providing advice or assistance to a buyer with regard to subdivision (1) or (2) of this subsection.

W. Va. Code § 46A-6C-2(a). Subsection (b) lists those that are exempt from this article.

[4]West Virginia Code § 46A-6C-1 defines a buyer as "an individual who is solicited to purchase or who purchases the services of a credit services organization as defined in section two of this article." W. Va. Code § 46A-6C-1(1).

[5]West Virginia Code § 46A-6C-9 provides:

    (a) A buyer injured by a violation of this article may bring any action for recovery of damages. The damages awarded may not be less than the amount paid by the buyer to the credit services organization, plus reasonable attorney's fees and court costs.

    (b) The buyer may also be awarded punitive damages.

W. Va. Code § 46A-6C-9.

-8-

the West Virginia Supreme Court determines both parts of the first question in the positive, then the issue becomes whether he suffered an injury as a result of a violation of the CSO statutes.

## 2.
## Whether the CSO claim is preempted by the National Bank Act

Likewise, Plaintiffs' claims under the CSO statutes may be moot if they are preempted by the National Bank Act, 12 U.S.C. § 24. Although the parties have briefed this issue, Plaintiffs assert that this precise issue is pending before the Fourth Circuit Court of Appeals in *H &R Block Eastern Enterprises, Inc. v. Turnbaugh*, Nos. 08-2162, and 08-2163 (4th Cir. filed Oct. 9, 2008), which is currently set for oral argument on October 29, 2009. Given the posture of this case and the fact the Court is certifying questions to state court, the Court finds it prudent to wait to rule upon this issue until after the Fourth Circuit makes its decision. The Court finds this approach particularly appropriate in light of the fact that a decision on preemption only will impact the CSO claims, and it will not be dispositive of the entire case. In addition, given the fact it seems likely that the Fourth Circuit will issue its ruling on preemption before the West Virginia Supreme Court will resolve the CSO issues, this Court does not believe that an additional delay in getting the process started before the West Virginia Supreme Court is warranted. If the Fourth Circuit finds preemption exists, the West Virginia Supreme Court can simply decline to address the first two certified questions. Therefore, the Court **DENIES without prejudice** the issue of preemption and **DIRECTS** the parties to contact this Court and the West Virginia Supreme Court immediately after the Fourth Circuit issues its decision.

### 3.
### Whether there is sufficient evidence of an agency
### relationship, breach of fiduciary duty, and damages

Next, Defendant asserts Plaintiffs' breach of fiduciary duty claim fails because (1) Defendant never agreed to subordinate its financial interest to Plaintiffs' interests, (2) there is no genuine issue of material fact regarding a breach, and (3) there is no evidence of damages. With respect to the first of these arguments, the parties disagree as to whether Defendant had to subordinate its financial interests to Plaintiffs before an agency/fiduciary relationship can exist. Clearly, this question is easily subsumed in Plaintiffs' fourth proposed certified question regarding whether a tax preparer who helps a customer obtain a RAL in exchange for compensation is an agent under West Virginia law. If the West Virginia Supreme Court finds an agency relationship exists, then the issues of breach and damages become important. Upon review of these issues, this Court finds that, taking the evidence in the light most favorable to the Plaintiffs, there is a sufficient basis to allow a jury to determine whether Defendant breached its alleged duty of loyalty and trust to Plaintiffs and, if so, whether Plaintiffs suffered damages. Therefore, the Court **DENIES** Defendant's Motion for Summary Judgment on the grounds there is insufficient evidence of breach and damages with respect to Plaintiffs' agency claim. However, the Court leaves to the West Virginia Supreme Court the decision of whether an agency relationship exists in the first instance.

### 4.
### Whether there is sufficient evidence of an
### an unfair or deceptive act or practice and loss

Finally, with regard to Plaintiffs' UDAP claim, Defendant argues there is no evidence of an unfair or deceptive act or practice and there is no evidence of an ascertainable loss of money or property. West Virginia Code § 46A-6C-7(d) provides that a "breach by a credit service

organization of a contract under this article, or any obligation arising from this article, is an unfair or deceptive act or practice." W. Va. Code § 46A-6C-7(d). If the West Virginia Supreme Court determines that Defendant qualifies as a CSO, then, for the reasons stated and subject to the rulings above, the Court finds Plaintiffs may proceed on this claim.

### C.
### Exercise of Court's Discretion

Finally, Defendant argues this Court should exercise its discretion in not certifying the questions. Although the Court appreciates Defendant's concerns with respect to additional costs and delays and the fact Plaintiffs chose to litigate this case in a federal forum, the Court finds that the ends of justice are better met by having a definitive answer to important questions under West Virginia law. Therefore, the Court **GRANTS** Plaintiffs' Motion to Certify the Questions.

### D.
### Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for summary judgment on their claim that Defendant qualifies as a CSO and the evidence establishes Defendant violated the related statutory provisions. As the CSO question is being certified to state court, the Court **DENIES without prejudice** Plaintiffs' motion.

### III.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Certify Questions; **DENIES**, in part, Defendant's Motion for Summary Judgment; **DENIES without prejudice** the remainder of Defendant's Motion for Summary Judgment; **DENIES without prejudice** Plaintiffs' Motion for Summary Judgment; and **HOLDS IN ABEYANCE** Plaintiffs' Motion for Class Certification. As resolution of the certified questions is necessary in order to efficiently proceed in this case, the Court **STAYS** the entire case until the questions are answered.

The Court **DIRECTS** the parties to contact the Court within 7 days of the West Virginia Supreme Court's decision.

The Court **DIRECTS** the Clerk to send a certified copy of this written Order and Opinion to the West Virginia Supreme Court of Appeals, counsel of record, and any unrepresented parties.

        ENTER:  September 29, 2009

        _____
        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE